Vivian G. BRINER, Appellant,

v.

GENERAL MOTORS CORPORATION and Universal Chevrolet, Inc., Appellees.

Court of Appeals of Kentucky.

June 12, 1970.

Rehearing Denied Jan. 15, 1971.

Irwin G. Waterman, Allan Weiss, Ben Rosenbaum III, Louisville, for appellant; Morris, Garlove, Waterman & Johnson, Louisville, of counsel.

John A. Fulton, William D. Grubbs, Louisville, for appellee General Motors Corp.; Woodward, Hobson & Fulton, Louisville, of counsel.

James H. Frazee, Herman E. Frick, Louisville, for appellee Universal Chevrolet, Inc.; Frazee & Frick, Louisville, of counsel.

CLAY, Commissioner.

Appellant plaintiff was seriously injured in an automobile accident which she claimed was caused by a defect in the steering mechanism of the automobile which she owned and was driving. This suit was brought against the two appellees, hereinafter designated General and Universal, on the theories of manufacturer's liability and negligent repair. The case was submitted to the jury against General, the manufacturer, under an instruction which is not questioned here, and the jury found for it. Universal, the dealer and seller, was let out on a directed verdict. The plaintiff raises four questions on this appeal, but we find no reversible error because in our opinion plaintiff failed to prove a basis of liability against either defendant.

On June 22, 1963, plaintiff bought a new Chevrolet from Universal. The vehicle operated properly in all respects for about three months. In September she brought the car to Universal complaining that "it was pulling and galloping and there was vibration in it". What was then done does not appear important, but apparently the condition was not remedied to her satisfaction. In May 1964 she wrote to General complaining (among other things) of vibration and lack of speed. Later Universal found and corrected a maladjustment of the air pressure in the front tires. It was then discovered that the air conditioning compressor was a cause of vibration and it was replaced. In August 1964 road tests were given the car by employees of Universal and a Chevrolet dealer in Cincinnati, and they were unable to find anything wrong. The last time Universal serviced the car was August 17, 1964, at which time the car had been driven 16,486 miles.

On March 26, 1965, plaintiff had her accident. At that time the car had been driven 25,527 miles. She was driving from Cincinnati to Louisville in the early afternoon on U.S. Highway 42. She testified that she was about two car lengths from an automobile ahead when "something happened to the car" and it "started veering to the left". She tried to pull back to the right and said the wheel would not turn. She said something was dragging underneath and her car would not turn because "it was locked". The foot brake was being applied at the time. Her car struck an on-coming automobile.

We will try to sum up our understanding of plaintiff's theory of liability on the part

of both defendants. Three months after its purchase her car began to shimmy and vibrate. There was a defective air conditioner which contributed to this vibration. The defendants failed to align the front end and check adjustment of the wheel bearings. The vibration eventually resulted in the freezing of some part of the steering mechanism or a loose wheel bearing caused a breakdown in the linkage of the steering system.

There was no direct proof of the existence of a defective mechanical condition existing at the time of the accident which could have caused it. The only evidence of the physical condition of her car after the accident, which plaintiff challenges as incompetent, was introduced by General. It constituted proof that there was no mechanical breakdown in the steering system. Circumstantially her testimony about how the accident happened tended to prove that there was a mechanical failure of some sort. In support of this theory she introduced the testimony of two experts. In answer to hypothetical questions they in substance testified that abnormal vibration in an automobile, which could be caused by incorrect tire balancing, an improperly mounted air conditioner compressor, misalignment, or a loose or broken bearing, could affect the steering mechanism and could result in the fretting or freezing of a knuckle joint or a bearing.

■ Plaintiff first contends the trial court erroneously directed a verdict for Universal since there was evidence that on the complaint of vibration it could and should have made additional tests to ascertain the cause. Assuming that Universal failed to make a proper inspection, to establish a case of negligence creating liability the causal relationship between the acts or omissions and the accident must be shown. See McAtee v. Holland Furnace Co., Ky., 252 S.W.2d 427 (1952), and Collins Company v. Rowe, Ky., 428 S.W.2d 194 (1968). To forge the link between Universal's alleged misconduct and the ac-

cident, it was incumbent upon plaintiff to prove by evidence of substance that the alleged negligence was a proximate cause of the accident. Here is where the plaintiff's case breaks down.

The unfortunate event happened seven months and 9,000 miles after Universal had last serviced the car. During that period plaintiff did not complain to Universal about the improper operation of her automobile. Three times during that period she had it serviced at another garage but its records did not disclose any complaint about, or discovery of, vibration or any difficulty related to the steering mechanism or the suspension system.

■ Plaintiff maintains, however, that the causal relationship between Universal's acts or omissions can be established by circumstantial evidence. With this we agree. The difficulty is that the circumstantial evidence is insufficient to establish a reasonable probability that there was a discoverable mechanical defect in plaintiff's automobile when last serviced by Universal which caused this accident. Such a possibility exists, but the law requires more than that.

While reasonable inferences are permissible, a jury verdict must be based on something other than speculation, supposition or surmise. Wright v. Hickman, 308 Ky. 634, 215 S.W.2d 553 (1948); Randall v. Shelton, Ky., 293 S.W.2d 559 (1956); Peterman v. Darby, Ky., 419 S.W.2d 747 (1967). It is, of course, often difficult to draw the line between a reasonable inference and speculation. But evidence that will support a reasonable inference must indicate the *probable*, as distinguished from a *possible* cause. See Sutton's Adm'r v. Louisville & N. R. Co., 168 Ky. 81, 181 S. W. 938 (1916), and Phoenix Amusement Co. v. Padgett's Adm'x, 301 Ky. 338, 192 S.W.2d 105, 107 (1946).

To justify a finding of liability on Universal's part would require a jury first to infer a breakdown in the steering mecha-

nism attributable to a defect. Secondly it would be required to further infer that, had Universal made different inspections and tests it would have discovered and corrected the condition which ultimately caused plaintiff's car to veer to the left. This is piling inference upon inference, which leads to speculation. As said in Sutton's Adm'r v. Louisville & N. R. Co., 168 Ky. 81, 181 S.W. 938, 940 (1916):

"* * * it is held that conjecture affords no sound basis for a verdict. It is not sufficient, therefore, to present a number of circumstances about which one might theorize as to the cause of the accident. Where it is sought to base an inference on a certain alleged fact, the fact itself must be clearly established. If the existence of such a fact depend on a prior inference, no subsequent inference can legitimately be based upon it."

As said in Le Sage v. Pitts, 311 Ky. 155, 223 S.W.2d 347, 352 (1949):

"An inference may be drawn from a clearly established fact, but, if the conclusion is drawn upon a fact dependent for proof of its existence upon a prior inference, the evidentiary fact is too remote to support the conclusion."

In Klingenfus v. Dunaway, Ky., 402 S.W.2d 844 (1966), the basis of liability was an alleged defect in a tractor. The opinion recites (page 846):

"What the appellee asks is that an inference be drawn that new bearings were ordered for this tractor; that another inference be drawn, upon the first one, that the tractor without the new bearings was unsafe; and that a third inference then be drawn that the accident happened by reason of the previously inferred defective condition of the tractor. Such a pyramiding of inferences is not allowable."

While the inference-upon-inference principle is sometimes referred to as a rule of evidence, in practical application it raises the specter of speculation. Considering the length of time that elapsed after Universal's last servicing of the automobile, the mileage driven, the uncertain character of the cause of the accident, we are too far out in the realm of conjecture to have a proven case of liability. There were just too many possible causes other than a *mechanical defect attributable to Universal's negligence*.[1]

We said in Highway Transport Co. v. Daniel Baker Co., Ky., 398 S.W.2d 501, 502 (1966):

"* * * the claimant must introduce sufficient proof to tilt the balance from *possibility* to *probability*. Only then would a jury have some basis for drawing a reasonable inference that the accident was in fact caused by a combination of circumstances proximately traceable to a negligent act or acts." (Emphasis added)

See also Klingenfus v. Dunaway, Ky., 402 S.W.2d 844 (1966), and Brown v. Rice, Ky., 453 S.W.2d 11.

We hold that plaintiff's evidence was insufficient to establish a reasonable probability that the accident was caused by a mechanical defect for which Universal was responsible. The trial court properly directed a verdict for Universal on this negligence theory of liability, and likewise General Motors was not liable on this theory if Universal was acting as its agent (which plaintiff contends but we do not decide).

■ The theory on which this case was submitted to the jury against General Mo-

---

1. To name a few, the cause could have been striking an object on the highway (plaintiff testified there was something dragging underneath her car), a failure of power in the steering system, a malfunction of the brakes, the breaking of a tie rod, or the deflation of the left front tire.

tors was under the doctrine of manufacturer's "strict liability". See Dealers Transport Co. v. Battery Distributing Co., Ky., 402 S.W.2d 441 (1966), and Post v. American Cleaning Equipment Corporation, Ky., 437 S.W.2d 516 (1969). General Motors had moved for a directed verdict, which was overruled. Plaintiff's principal contention for reversal is that the court improperly permitted the introduction of incompetent evidence that established no mechanical defect was discovered in plaintiff's automobile after the accident and tended to give another explanation of the accident not attributable to a mechanical defect. All of this evidence was favorable to General. We believe it unnecessary to consider its competency because plaintiff's proof failed to present an issue of liability on the part of General submissible to a jury.

What we have heretofore said about plaintiff's claim against Universal applies equally, if not more so, to General. Plaintiff's proof was insufficient to establish a reasonable probability that a defective condition attributable to General, existing at the time of delivery of the automobile, was a proximate cause of this accident. For the reasons heretofore given, it is entirely speculative that General's breach of any obligation to the plaintiff was the cause of her injuries. Since a directed verdict for General would have been proper, an error in the admission of evidence, if any, does not justify reversal of the judgment.

Plaintiff complains that the trial court improperly denied her motion to file an amended complaint against Universal which injected a breach of warranty theory of liability against it. This theory fails to bridge the gap which we hold was fatal to plaintiff's original claims against Universal and General. Therefore the rejection of this amended complaint, even if error, was not prejudicial.

The judgment is affirmed.

All concur.