## George M. MURPHY, Appellant,

v.

## KEY WEST CROSSING, LLC; and Kenton County Board of Adjustment, Appellees.

### No. 2003–CA–001812–MR.

Court of Appeals of Kentucky.

Oct. 15, 2004.

Case Ordered Published by Court of Appeals Nov. 24, 2004.

---

1. 18 U.S.C §§ 2, 1341, and 1346.

2. SCR 3.166(1).

Robert P. Gettys, Patrick M. Flannery, Covington, KY, for appellant.

Gerald F. Dusing, Scott M. Guenther, Covington, KY, for appellee Key West Crossing, LLC.

Before JOHNSON, TAYLOR, and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

George M. Murphy is appealing for the second time from summary judgment or- ders entered by the Kenton Circuit Court after the Kenton County Board of Adjust- ment (Board) granted conditional use per- mits allowing the development and opera- tion of a golf course adjacent to Murphy's property. We conclude that the Board failed to make required threshold findings of fact before issuing the conditional use permit, and that the circuit court erred by granting summary judgment for appellees.

In March 1998 Roger Shrout, on behalf of appellee Key West Crossing, LLC, filed an application with the Board seeking a conditional use permit to build a golf course in an area zoned for agricultural use. Murphy objected to the request. The Northern Kentucky Area Planning Commission recommended denial of the permit both because the proposed use was not necessary or desirable, and because that use, with access from the adjacent U.S. 25 across busy railroad tracks at the Key West Road crossing, would be detri- mental to the public's health, safety or general welfare. After a hearing in April 1998, the Board tabled the issue for fur- ther discussion.

In July 1998 another hearing was con- ducted. The Planning Commission again recommended denial of the requested con- ditional use permit, noting that the submit- ted information was insufficient and incom- plete, and that there were concerns about traffic patterns and safe access to the site from U.S. 25. The Board nevertheless granted the requested permit, conditioned on Key West's future submission of plans for approval by the Board.

Murphy appealed to the Kenton Circuit Court, which granted appellees' motion for a summary judgment, holding that the Board's decision was not arbitrary as KRS 100.237(1) permits a conditional use permit to be granted subject to "attached require-

ments that something be done before the request may be initiated." That decision was reversed by this court in Appeal No.2000–CA–001105–MR, which noted that although a board of adjustment may attach conditions to a conditional use permit's approval, KRS 100.237(1) neither dispenses with a board's fundamental obligation to make findings of fact based upon substantial evidence, nor allows a board to approve permits conditioned on the future justification of the request. More specifically, this court held:

> The Board's decision to grant a conditional use permit, contingent upon Shrout's furnishing a plan in the future, lacks a substantial evidentiary foundation. By its very definition, a conditional use permit must contain a "statement of the factual determination by the board of adjustment" which justifies its issuance. KRS 100.111(7).

The matter was remanded to the Board with directions to deny the permit due to the lack of sufficient evidence.

Meanwhile, Key West made property improvements and hired consultants to design a golf course and conduct a feasibility study. Key West then reapplied for a conditional use permit, which the Board denied based on concerns about safe access to the property via the Key West crossing. After a study confirmed that the Key West crossing was unsafe and could not reasonably be improved, Key West began advocating for improvements to the "Murphy crossing" used for access to the Murphy property, so that the golf course could be accessed from U.S. 25 at KY 14.

On October 21, 2002, the Planning Commission recommended approval of Key West's application for a conditional use permit, subject to the following conditions:

1. That all public improvements be approved by all applicable agencies including, but not limited to, the Kenton County Planning Commission, Norfolk Southern Railroad, and the Kentucky Transportation Cabinet.

2. That the previously submitted development plan, except for the amended access, be incorporated as part of this application and that it meet the minimum requirements of the Kenton County Zoning Ordinance.

The Commission noted that the proposed improvements should be approved by all applicable agencies to ensure that they would "not be detrimental to the health, safety, or general welfare of persons residing or working in the vicinity, or injurious to property or improvements in the vicinity of the site[.]" Further, it concluded that "[t]he proposed golf course is desirable and will provide a facility and service which will contribute to the general well being of the community" as there was a need for recreational facilities in the southern portion of the county.

Three days later, the Board conducted a three-hour public hearing on Key West's application for a conditional use permit. Evidence was adduced regarding the inability to adequately improve the Key West crossing and the steps which were planned for improving the Murphy crossing at KY 14. Those steps included the installation of railroad gates and signals, the construction of a stacking/deceleration lane, and the construction of a new public roadway. The proposals were supported by the written report of traffic engineer Jack Gehrum, who confirmed that the upgraded Murphy crossing would conform with standard traffic engineering practices. The proposals also were supported by the report of Viox & Viox, Inc., addressing the dangers of the Key West crossing and recommending its closure. During the hearing there were discussions about acquiring a sufficient right of way for the road, about Key West's absorption of vari-

ous costs, and about dedicating the new roadway as a county road. Evidence was adduced concerning the golf course's anticipated operation and use, and regarding the regional benefits of developing the facility and nearby properties. There was testimony that although the design of the proposed Murphy crossing had not yet been approved by state and local administrative bodies, it had been approved by railroad authorities.

Murphy and his attorney challenged the sufficiency of the evidence to support Key West's application for a conditional use permit, asserting that there was inadequate evidence to address the impact which passing trains would have on U.S. 25 traffic while cars waited to cross the tracks to the golf course. They asserted that the Murphy crossing would be unsafe for the proposed use, and that safer access to the course could be had through another crossing located ¾ mile away.

At the close of the hearing the Board unanimously agreed to the following motion:

> [T]o approve the conditional use permit for an 18–hole golf course on the property located at 175 Key West Road using the supporting information in the Planning Commission report and with the following conditions that all public improvements be approved by all applicable agencies including but not limited to the Kenton County Planning Commission, Norfolk Southern Railroad and the Kentucky Transportation Cabinet and that the previously submitted development plan except for the amended access be incorporated as far as the application and that it meet the minimum requirements of the Kenton County Zoning Ordinance, and furthermore based on discussions that this access be provided at the - where the current Murphy crossing is and that this access

include gates and signals of the railroad, in accordance with the requirements of the Norfolk Southern Railroad.

Shrout then was advised in writing that the conditional use permit had been approved subject to the following conditions:

1. That all public improvements be approved by all applicable agencies including, but not limited to, the Kenton County Planning Commission, Norfolk Southern Railroad, and the Kentucky Transportation Cabinet.

2. That the previously submitted development plan, except for the amended access, be incorporated as part of this application and that it meet the minimum requirements of the Kenton County Zoning Ordinance.

3. That a railroad crossing consistent with railroad specifications be constructed prior to issuance of a final Certificate of Occupancy.

On appeal the Kenton Circuit Court entered a summary judgment in favor of appellees. This appeal followed.

■ Murphy contends on appeal that the trial court erred by failing to find that the Board failed to make necessary findings of fact prior to issuing the conditional use permit. He asserts that the decision to issue the permit was arbitrary as based on insufficient evidence, that the Board misapplied KRS 100.237(1) by failing to determine the issue of safety prior to issuing the permit, and that the conditions which were attached to the permit improperly substituted for the Board's own findings as to safety. We agree that the conditional use permit was improperly issued.

A local board of adjustment may "hear and decide applications for conditional use permits," KRS 100.237, and it may attach necessary conditions to any such approved permit. KRS 100.237(1). However, the granting of such a permit "does not ex-

empt the applicant from complying with all of the requirements of building, housing, and other regulations." KRS 100.237(2). KRS 100.111(6) defines a "conditional use" as one

> which is essential to or would promote the public health, safety, or welfare in one (1) or more zones, but which would impair the integrity and character of the zone in which it is located, or in adjoining zones, unless restrictions on location, size, extent, and character of performance are imposed in addition to those imposed in the zoning regulation[.]

KRS 100.111(7) defines a "conditional use permit" as

> legal authorization to undertake a conditional use, issued by the administrative official pursuant to authorization by the board of adjustment, consisting of two (2) parts:
>
> (a) A statement of the factual determination by the board of adjustment which justifies the issuance of the permit; and
>
> (b) A statement of the specific conditions which must be met in order for the use to be permitted[.]

Kenton County Zoning Ordinance Section 18.7(4) specifies that before a conditional use permit may be issued, "the board of adjustment shall find that the application" for the permit "meets the requirements of this ordinance and Section 9.14." Section 9.14(B) in turn adopts the language of KRS 100.237 relating to a board of adjustment's powers regarding conditional use permits, and Section 9.14(A) specifies in part:

> Subject to the requirements of Section 18.7, the board of adjustment *may* authorize a conditional use to be located within any zone in which such conditional use is permitted, *if the evidence presented by the applicant is such as to establish, beyond any reasonable doubt:*

1. That the proposed use at the particular location is *necessary or desirable* to provide a service or facility which will contribute to the general well being of the neighborhood or the community; *and*

2. That such *use will not be detrimental to the health, safety, or general welfare* of persons residing or working in the vicinity, or injurious to property or improvements in the vicinity.

(Emphasis added.)

■ The matter now on appeal turns on whether the Board made adequate findings to satisfy its obligations under KRS Chapter 100 and the Kenton County Zoning Ordinances. An administrative decision which grants relief to a party having the burden of proof, such as Key West, must be supported by findings which are based on substantial evidence. *See Bourbon County Board of Adjustment v. Currans*, Ky.App., 873 S.W.2d 836, 838 (1994).

Here, Key West adduced evidence to show that the proposed use of the golf course property was desirable and beneficial to the community, and that access to the property via the modified Murphy crossing would not be unsafe. However, Murphy questioned the ability to safely access the golf course via that crossing, and substantial time was spent discussing the issue during the hearing. Nevertheless, the Board never made a specific finding, either on the record during the hearing or in its subsequent order, to address the Section 9.14(A) requirement that Key West must "establish, beyond any reasonable doubt," that the property's proposed use "is necessary or desirable to provide a service or facility" which would contribute to the community's general well being, and that the proposed use would "not be detrimental to the health, safety, or general

welfare of persons residing or working in the vicinity, or injurious to property or improvements in the vicinity."

Appellees assert that substantial evidence was adduced below to support the Board's issuance of the conditional use permit. However, in light of the obvious dispute regarding the threshold issue of safety, coupled with the Board's failure to make the Section 9.14(A) required threshold findings before approving the application for a conditional permit, we cannot address whether the evidence was sufficient to support the grant of the permit. Further, as the language of Section 9.14(A) compels the Board to address the threshold issues prior to issuing a permit, there is no merit to appellees' suggestion that the failure to make the specific threshold determination as to safety can be remedied by subsequent determinations of safety made by other regulatory agencies.

The circuit court's order is reversed, and this matter is remanded to the Kenton County Board of Adjustment for further proceedings in accordance with the views stated herein.

ALL CONCUR.