RENDERED: FEBRUARY 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0509-MR

E. WAYNE BUSSELL AND
LINDA A. BUSSELL                                                    APPELLANTS

v.               APPEAL FROM FAYETTE CIRCUIT COURT
                 HONORABLE THOMAS L. TRAVIS, JUDGE
                 ACTION NO. 18-CI-00930

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT BOARD
OF ADJUSTMENT; P. BRANDEN
GROSS, CHAIRMAN; THOMAS
GLOVER; JOAN WHITMAN; CHAD
NEEDHAM; JANICE MEYER;
RAQUEL E. CARTER; AND HARRY
CLARKE                                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND JONES, JUDGES.

CETRULO, JUDGE: This is an appeal from an order of the Fayette Circuit Court

which upheld a decision of the Lexington-Fayette Urban County Board of

Adjustment ("the Board"). For the reasons set forth below, we affirm.

## FACTUAL BACKGROUND

This case arises from a request by Wayne and Linda Bussell ("the Bussells") for a variance from certain zoning regulations in Lexington. In 1982, the Bussells purchased their home located at the corner of Chinoe and Cochran Roads. In 2001, they began constructing a six-foot brick wall around their property. They obtained necessary permits, and the wall kept with a zoning ordinance in effect at that time, which permitted walls with a height of up to six feet. However, the Bussells did not complete their wall construction, leaving the front yard open and enclosing only three sides. They claim that they were informed at that time by the Division of Building Inspection ("DBI") that if they chose to complete construction of the front wall at a later date, the construction would be "grandfathered in" based upon approval of the plans in 2001. However, there is no written document confirming that representation.

Several years later, in 2016, the Bussells tore down their then existing home and rebuilt a home on the property. As part of the project, they planned to complete the brick wall along the front of their property on Chinoe Road. The walls along the back and sides were not demolished. The Bussells retained William Hodges ("Contractor Hodges") as their contractor. He submitted an application for the building permit to the DBI, which showed the wall but did not denote the height of the wall to be completed. The plans were approved, and the

-2-

property was routinely inspected throughout the project. During construction of the front wall, the DBI received an anonymous complaint regarding the wall. A DBI building inspector visited the property and purportedly advised Contractor Hodges that the wall appeared to be compliant. However, two days later, after the wall was complete, Contractor Hodges was informed by email that the height of the wall exceeded a four-foot requirement for the front yard. The Lexington-Fayette Urban County Government, unbeknownst to the Bussells or Contractor Hodges, had amended its zoning ordinance in 2012, changing the standard height of a front-yard fence from six feet to four feet.

Upon receipt of the email, the Bussells promptly applied for a variance with the Board. The Bussells outlined their reliance upon the DBI's statement that they would be "grandfathered in." They asserted that their actions were in good faith and with full intent to comply with all zoning requirements. They alleged grounds existed for granting the variance, as required by statute, *i.e*, that the variance would not negatively affect public health, safety, or welfare; the character of the vicinity; or unreasonably circumvent the requirements of the new zoning ordinance.

The Board conducted a hearing on February 12, 2018, with testimony presented both for and against the variance for the six-foot wall. The Board staff recommended against the variance. Contractor Hodges testified that it was perhaps

-3-

an error on his part that he did not indicate the height of the wall to be constructed in his building plans. The Board members questioned both staff and witnesses. The Bussells were represented by counsel who presented arguments and evidence to the Board. After considering all of the evidence, the Board denied the variance, stating that no exceptional circumstances warranted the same. The Bussells appealed to the Fayette Circuit Court pursuant to Kentucky Revised Statute ("KRS") 100.347. The Court upheld the Board's decision on April 3, 2023, resulting in this appeal.

## STANDARD OF REVIEW

The standard of review in planning and zoning matters was set forth in *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 456 (Ky. 1964). There, the highest Court in Kentucky held that the overriding concern of the reviewing court was whether the action of the administrative body was arbitrary. *Id.* In determining arbitrariness, the court must determine: (1) whether the agency exceeded its statutory authority; (2) whether the parties were afforded procedural due process; and (3) whether the agency decision was supported by substantial evidence. *See id.* (citations omitted).

KRS 100.241 grants the Board "the power to hear and decide on applications for variances" and allows the Board to "impose any reasonable

-4-

conditions or restrictions on any variance it decides to grant." KRS 100.243 sets forth the findings and considerations the Board must make before it may grant a variance:

> (1) Before any variance is granted, the board must find that the granting of the variance will not adversely affect the public health, safety[,] or welfare, will not alter the essential character of the general vicinity, will not cause a hazard or a nuisance to the public, and will not allow an unreasonable circumvention of the requirements of the zoning regulations. In making these findings, the board shall consider whether:
>
>> (a) The requested variance arises from special circumstances which do not generally apply to land in the general vicinity, or in the same zone;
>>
>> (b) The strict application of the provisions of the regulation would deprive the applicant of the reasonable use of the land or would create an unnecessary hardship on the applicant; and
>>
>> (c) The circumstances are the result of actions of the applicant taken subsequent to the adoption of the zoning regulation from which relief is sought.
>
> (2) The board shall deny any request for a variance arising from circumstances that are the result of willful violations of the zoning regulation by the applicant subsequent to the adoption of the zoning regulation from which relief is sought.

As the trial court noted, the Bussells did not argue that the Board exceeded its statutory authority, nor could it reasonably be argued that the Bussells were denied procedural due process. The Board heard arguments from its staff, the

property owners, and adjacent property owners who were both for and against the variance, and it considered evidence presented on behalf of the property owners.

Since 1964, our case law has reaffirmed that "[t]he legislative limits on the grant of variances [set forth in KRS 100.243] are *not* mere technicalities. The system delineated sets forth specific factors that the Board must consider and findings that must be made." *Louisville & Jefferson Cnty. Plan. Comm'n v. Schmidt*, 83 S.W.3d 449, 454 (Ky. 2001). Adequate findings of fact in strict compliance with KRS 100.243 are required before the Board may grant a variance.[1] *See* KRS 100.243(1).

A variance seeks a departure from the terms of a zoning regulation as to height, width, or location of structures. KRS 100.111(24). While a Board's decision to grant a variance may effectively amend a zoning ordinance, such Boards have been described as supplying the "safety valves" for "making a zoning plan workable." *See Kline v. Louisville & Jefferson Cnty. Bd. of Zoning Adjustment and Appeals*, 325 S.W.2d 324, 326 (Ky. 1959) (citation omitted). The applicant's burden is to provide evidence upon which a Board can justify allowing

---

[1] As the trial court observed, KRS 100.243 states that the Board has to make specific findings in order to "grant a variance." It is not entirely clear that such findings are required in order to "deny" a variance as the Board did here. "By setting forth findings that must precede the granting of a variance, the statute protects the overall zoning scheme from the ill effects of light and transient changes." *Bourbon Cnty. Bd. of Adjustment v. Currans*, 873 S.W.2d 836, 837 (Ky. App. 1994).

a variance and then make the findings of fact required by KRS 100.243. The purpose of the difficult standards is to uphold the spirit and broad applicability of the local zoning regulations, while providing for equitable relief in particular, isolated circumstances.

While the Board is not held to strict judicial standards in making its findings, it must include sufficient information to afford a basis for judicial review as to the arbitrariness of its decision. *Currans*, 873 S.W.2d at 838 (citation omitted). In *Currans*, this Court noted that the applicant for the variance bore the burden of proof in seeking the variance. *Id.* at 837 (citation omitted). There, the applicant "appeared before the [B]oard and offered testimony" that he sought the variance "to better facilitate the use of the premises in question." *Id.* at 838. His neighbors supported him and "manifested that they had no objection[,]" and there was no evidence presented against his request. *Id.*

Still, with that evidence and under the constraints of KRS 100.243, the Board denied the application. The circuit court reversed, directing the Board "to grant the variances." *Currans*, 873 S.W.2d at 839. On appeal, this Court reversed, noting that "[t]he question before the circuit court should have been whether the record compelled a finding in [the applicant's] favor, not whether the [B]oard's decision was supported by substantial evidence." *Id.* at 838. The Court explained:

> Not infrequently, contestants appear at the judicial level
> arguing that the administrative decision is not supported

-7-

by substantial evidence when the [B]oard has offered no relief in the first instance. In other words, the [B]oard has ruled that the one having the burden of proof – usually the applicant – has failed. In such cases, attention should be directed to the administrative record in search of compelling evidence demonstrating that the denial of the relief sought was arbitrary. The argument should be that the record compels relief. The argument that there is no substantial evidence to support non[-]relief is an anomaly.

*Id.*

Subsequently, in *Ball v. Oldham County Planning and Zoning Commission*, 375 S.W.3d 79, 88-89 (Ky. App. 2012), we distinguished *Currans* and upheld a *grant* of a variance on the basis that it was supported by substantial evidence. The Court again noted that in *Currans*, the Board had "voted to *deny* the applicant's requests for a variance." *Id.* at 87. Thus, "the question on appeal [in *Currans*] was 'whether the record compelled a finding in [the applicant's] favor, not whether the [B]oard's decision was supported by substantial evidence.'" *Id.* at 86 (citation omitted). Applying that standard to the facts here, which appear indistinguishable from those in *Currans*, we cannot say that the record before the Board compelled a finding in favor of the Bussells.

To compel a ruling in favor of the Bussells, the proof in their favor[2] must be so overwhelming that no reasonable person could have reached the same

---

[2] As discussed, the burden of proof is on the one seeking the variance. *Gentry v. Ressnier*, 437 S.W.2d 756, 758 (Ky. 1969).

-8-

decision as the Board, *i.e.*, that the Board acted arbitrarily. *See Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). Although the Bussells presented evidence in favor of granting the variance, the Board also heard ample evidence from the Board staff and other residents in opposition. The Board, as factfinder, had the sole authority to assess the weight and credibility of the evidence before it. *Ball*, 375 S.W.3d at 86.

The Board members asked specific and relevant questions of the witnesses. The Board heard from citizens who opposed the variance, as well as citizens who supported the Bussells. Before its vote, at least one Board member noted his concern for precedent that would be created by a grant of this variance to permit a wall that was in excess of four feet. The staff presented evidence that only three of 159 houses in a two mile stretch of Chinoe Road had front yard fences in excess of four feet, and those were constructed prior to the 2012 ordinance.

The staff report set forth reasons why disapproval of the variance was recommended. It stated that there were no compelling special circumstances related to the property that justified the variance. A four-foot fence would still offer sufficient security and privacy and comply with the ordinance. The reliance on the prior permit issued in 2003, before the 2012 amendment, carried little

weight in the Board's eyes. There was no permit issued in 2016 for the front yard fence, and the 2003 permit did not show the fence continuing into the front yard.

The trial court considered the evidence and conducted a full hearing on this matter, ruling that the Bussells failed to show that the Board's decision was arbitrary. This Court agrees. While the result reached here is difficult, as the wall has already been built, after reviewing the Bussells' contentions and the evidence presented, we conclude the record does not compel a decision in their favor. The Fayette Circuit Court is therefore AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Richard V. Murphy
Christopher M. Clendenen
Lexington, Kentucky

BRIEF FOR APPELLEES:

Tracy W. Jones
Lexington, Kentucky